1 | **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lucinda Tomchee, | CIV 09-1367-PHX-NVW (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles Ryan, | |
| Respondent. | |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

Petitioner Lucinda Tomchee, who is confined in the Arizona State Prison Complex-Perryville, in Goodyear, Arizona, filed a Petition for Writ of Habeas Corpus through counsel pursuant to 28 U.S.C. § 2254. (Doc. #1.) Respondent filed an Answer on September 9, 2009. (Doc. #10.) Despite having an opportunity to do so, Petitioner did not file a reply.

**BACKGROUND**

On August 28, 2003, at approximately 1:16 a.m., Phoenix Police Officers Keith Young and Josh Adams were investigating a burglary near the intersection of Chandler Boulevard and the I-10 overpass. (Doc. #1, App. 7 at 37.) They had parked their patrol cars, on the side of the road, with their lights on. (Doc. #1, App. 7 at 37.) Officer Adams was in the driver's seat of his car, seeking information on his computer; Officer Young was standing in the doorway of Adams' vehicle, which had the driver's door open. (Doc. #1, App. 7 at 37.)

Petitioner was driving her vehicle eastbound on Chandler Boulevard. (Doc. #1, App. 7 at 37.) Earlier that evening, she had been at Serrano's Restaurant with Elmer Roanhorse, and had been drinking margaritas and tequila. (Doc. #1, App. 6 at 77-78, 82-84, 90.) The

bartender allegedly told Petitioner and Mr. Roanhorse that he believed Petitioner had too much to drink, and Mr. Roanhorse assured the bartender that he would be driving. (Doc. #1, App. 6 at 90-92.) Petitioner and Mr. Roanhorse left the bar at approximately 9:30 or 10:00 p.m.; Petitioner and Mr. Roanhorse were together in Petitioner's vehicle until approximately 11:15 or 11:30 p.m., when Mr. Roanhorse left the vehicle to walk home. (Doc. #1, App. 6 at 81-83, 90-91.)

Petitioner drove her vehicle into the back of Officer Adams' police car, sideswiped it, striking Officer Young and endangering Officer Adams. (Doc. #1, App. 7 at 37.) Officer Young sustained severe injuries to his head, back, and legs. (Doc. #1, App. 7 at 37-38.)

Petitioner continued driving. (Doc. #1, App. 7 at 38.) Officer Adams could not start his vehicle, so he entered Officer Young's vehicle and pursued Petitioner. (Doc. #10, Exh. A at 1.) After subsequently detaining Petitioner, officers attempted to administer field sobriety tests, but Petitioner was deemed too intoxicated to continue. (Doc. #10, Exh. A at 1.)

When interviewed by the police, Petitioner claimed that she had only one margarita. (Doc. #10, Exh. A at 1.) She initially admitted striking a vehicle, but later claimed that she did not remember a collision. (Doc. #10, Exh. A at 1.) Also, she could not explain why she did not stop after the collision. (Doc. #10, Exh. A at 1.)

The police found various items in Petitioner's vehicle, including: (1) a marijuana cigarette; (2) bindles commonly used for carrying cocaine; (3) a brown vial; (4) two bags containing marijuana or marijuana residue; (5) a metal spoon that could be used for taking narcotics; (6) an Advil bottle containing marijuana; (7) a "Trails" lighter; (8) a glass pipe of a type commonly used for smoking marijuana; (9) "rolling papers"; (10) two straws; and (11) a bag containing a white powdery substance that was later determined to be cocaine. (Doc. #1, App. 6 at 70-74; Doc. #10, Exh. A at 2.)

Three vials of blood were taken from Petitioner; a forensic analysis of contents revealed BAC levels of .192, .174, and .157. (Doc. #1, App. 6 at 6.) Lab tests also reported that byproducts of marijuana and cocaine were in her system. (Doc. #1, App. 6 at 43-44.)

Officer Young was transported to a medical center and placed in a medically-induced coma. (Doc. #10, Exh. A at 2.) He sustained fractures to his face, skull, spine, ribs, and fibula. (Doc. #10, Exh. A at 2.) Officer Young also suffered paralysis in the lower extremities and an eye injury of undetermined severity. (Doc. #10, Exh. A at 2.)

The State charged Petitioner with: one count of aggravated assault; three counts of endangerment; one count of leaving the scene of a serious injury accident; one count of possession or use of narcotic drugs; one count of possession or use of marijuana; and one count of possession of drug paraphernalia. (Doc. #1, App. 4.) Petitioner entered into a plea agreement, in which she plead guilty to one count of aggravated assault, one count of endangerment, and one count of leaving the scene of a serious injury accident. (Doc. #10, Exh. B.) The state court accepted the guilty pleas. (Doc. #10, Exhs. C, D.)

Prior to her sentencing, Petitioner told the pre-sentence report writer that she only had "a margarita and a shot of tequila." (Doc. #10, Exh. A at 2.) She claimed not to recall her actions after leaving the bar, and added that she "believes she might have been drugged sometime prior to the collision." (Doc. #10, Exh. A at 2.)

Sentencing took place on June 11, 2004. On Count One, aggravated assault, Petitioner was sentenced to an aggravated sentence of 15 years. (Doc. #10, Exh. D. at 3.) On Count Two, endangerment, Petitioner was sentenced to an aggravated term of three years, to run concurrently with the sentence of Count One. (Doc. #10, Exh. D. at 3.) On Count Three, leaving the scene of a serious injury accident, the state court suspended the imposition of sentence and placed Petitioner on probation for five years, beginning with her release from prison. (Doc. #10, Exh. D. at 3.)

On August 27, 2004, Petitioner filed a notice of post-conviction relief. (Doc. #10, Exh. E.) Counsel was appointed, and on April 17, 2006, filed a petition for post-conviction relief, raising five issues: (1) that the sentencing was contrary to <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); (2) that the State failed to provide adequate notice of its intent to seek an aggravated sentence; (3) that she was denied her right to the effective assistance of counsel; (4) that newly discovered evidence

would have altered her decision to enter into the plea agreement; and (5) that the factual basis was insufficient to support her guilty plea to aggravated assault and the "dangerousness" sentence enhancement factor. (Doc. #10, Exh. F.) Attached to her post-conviction relief pleadings, was the deposition of Liliano Castro in support of Petitioner's newly discovered evidence claim. (Doc. #10, Exhs. F, G, L.) Petitioner argued, "[t]he deposition was taken on October 29, 2004 and its transcript was sent to the defense on May 18, 2005. It contains testimony that ... lends credibility to Petitioner's impression that she was surreptitiously dosed with intoxicants." (Doc. #10, Exh. F at 11.) The State filed a subsequent motion to strike the Castro deposition claiming that "the deposition was never attached to [Petitioner's] original [p]etition ... [and] violates not only Rule 32, but also settled precedent designed to promote fairness in litigation." (Doc. #10, Exh. L.)

On January 29, 2007, the state court issued a minute entry granting the State's motion to strike the Castro deposition, finding that Petitioner had failed to state a colorable claim for post-conviction relief, and summarily dismissing the petition. (Doc. #10, Exh. G.) Petitioner then filed a petition for review by the Arizona Court of Appeals raising the same five issues presented in her petition for post-conviction relief. (Doc. #10, Exh. H.) The appellate court denied review on February 5, 2008. (Doc. #1, App. 12.) The court then granted Petitioner's motion to reinstate the petition, and again denied the petition for review on August 5, 2008. (Doc. #1, App. 12.)

On July 2, 2009, Petitioner filed the instant habeas petition alleging five grounds for relief. In Ground One, she alleges a violation of her Sixth and Fourteenth Amendments rights pursuant to <u>Apprendi v. New Jersey</u> and <u>Blakely v. Washington</u>. (Doc. #1 at 6-9.) In Ground Two, she asserts a violation of her federal due process rights based on the State's failure to properly notice the intent to seek an aggravated sentence. (Doc. #1 at 9-10.) In Ground Three, Petitioner alleges she was denied the effective assistance of counsel in connection with her guilty plea in violation of her Fifth, Sixth, and Fourteenth Amendment rights. (Doc. #1 at 10-12.) In Ground Four, she alleges that her plea should be set aside based on newly discovered evidence. (Doc. #1 at 13-16.) In Ground Five, Petitioner alleges

that the factual basis for the plea was insufficient to support her guilty plea. (Doc. #1 at 16-19.)

Respondent filed an Answer on September 9, 2009 (Doc. #10). Petitioner has not filed a reply.

**DISCUSSION**

In his Answer, Respondent contends that all five of Petitioner's claims either fail on the merits or are not cognizable on federal habeas review. As such, Respondent requests that the Court deny and dismiss Petitioner's Petition for Writ of Habeas Corpus with prejudice.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

**A.     Ground One**

In Ground One, Petitioner argues that the state court violated her Sixth and Fourteenth Amendment rights by imposing an aggravated sentence on Count One without having a jury determine the aggravating factors.

The record demonstrates that the state court imposed an aggravated sentence, 15 years, on Count One, a dangerous offense. (Doc. #10, Exh. D at 2-3.) It found numerous aggravating factors with regard to Count One, including: Petitioner's 1993 misdemeanor DUI conviction in New Mexico; her being severely impaired by alcohol; her minimizing her responsibility; her endangering others besides Officer Young; her possessing cocaine and marijuana at the time of the offense; her having metabolites of cocaine and marijuana in her system; her possessing drug paraphernalia; the extreme emotional trauma to the Young family; and the "horrific" physical and emotional trauma suffered by Officer Young. (Doc. #1, App. 6 at 136-38.)

Here, the Court finds that Apprendi/Blakely was not violated since one of the aggravating factors found by the state court was a prior conviction, which is exempt from Blakely. After one Blakely-exempt or Blakely-compliant factor has been established, an Arizona judge can impose any sentence within the statutory sentencing range. See State v. Martinez, 115 P.3d 618, 624 (Ariz. 2005); State v. Burdick, 125 P.3d 1039, 1042 (Ariz. Ct. App. 2005). The fact that Petitioner's had a prior misdemeanor conviction does not affect the analysis; prior misdemeanor convictions are Blakely-exempt. See State v. Molina, 118 P.3d 1094, 1097-99 (Ariz. Ct. App. 2005); State v. Aleman, 109 P.3d 571, 580 (Ariz. Ct. App. 2005).

Accordingly, the state court's consideration of the aggravating factors and imposition of an aggravating sentence did not violate Apprendi/Blakely and was not contrary to, nor an unreasonable application of, clearly-established federal law. The Court will recommend that Petitioner's claim as asserted in Ground One be denied.

///

**B.     Ground Two**

In her second ground for relief, Petitioner asserts a violation of her federal due process rights based on the State's failure to properly notice its intent to seek an aggravated sentence. Petitioner appears to argue, citing to Apprendi and State v. Nichols, 33 P.3d 1172 (Ariz. Ct. App. 2001), that sentencing enhancements should be charged in the indictment or noticed no later than 20 days before trial pursuant to Rule 16.1(b) of the Arizona Rules of Criminal Procedure.

The Court finds Petitioner's reliance on Ariz.R.Crim.P. 16.1(b), which provides that "[a]ll motions shall be made no later than 20 days prior to trial" misplaced. Rule 16.1(b) applies to pre-trial motions, and Petitioner cites no authority supporting any possible contention that it also applies to the State's notice of alleged aggravating factors. Additionally, although Ariz.R.Crim.P. 15.1(i)(2), imposes a notice requirement for aggravating factors in capital cases, the criminal rules contain no such requirement for noncapital cases. Furthermore, in State v. Nichols, the court reiterated that sentencing enhancements need not be alleged in the charging document and stated that notice need only comport with "Arizona's traditional notice requirements for alleging sentence enhancements." 33 P.3d at 1176.

In any event, the Court finds that Petitioner had more than adequate notice of the possibility of an aggravated sentence and of the aggravating circumstances. For instance, on Count One, the parties bargained for a possible sentencing range of 7 to 15 years, when the presumptive sentence is 10.5 years. (Doc. #10, Exh. B.) The state court informed Petitioner of the range of sentences before she pled guilty. (Doc. #10, Exh. C.) The pre-sentence report recommended greater than presumptive sentences (Doc. #10, Exh. A at 5), and the State's sentencing memorandum listed eight possible aggravating circumstances (Doc. #10, Exh. I at 5-10). Petitioner's sentencing memorandum acknowledged that the State's sentencing memoranda had listed eight aggravating circumstances, and disputed them. (Doc. #1, Apps. 6, 8.) Accordingly, the notice Petitioner received satisfied due process. See State v. Jenkins, 970 P.2d 947, 953 (Ariz. Ct. App.1998) (in second-degree murder case, notice of aggravating

factors in state's presentencing memorandum satisfied due process); State v. Marquez, 617 P.2d 787, 789 (Ariz. Ct. App.1980) (no error when trial court *sua sponte* found aggravating circumstances from record even though "prosecutor had neither alleged nor attempted to separately prove" them); State v. Ford, 606 P.2d 826, 827 (Ariz. Ct. App.1979) (presentence report provided adequate notice of aggravating circumstances).

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. The Court will recommend that Petitioner's claim as asserted in Ground Two be denied.

**C.    Ground Three**

In Ground Three, Petitioner alleges she was denied effective assistance of counsel in connection with her guilty plea in violation of her Fifth, Sixth, and Fourteenth Amendment rights. Petitioner contends that defense counsel was constitutionally ineffective in five respects.

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether

some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

The two-prong test set forth in Strickland also applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel fell below the level of competence demanded of attorneys in criminal cases. See id. at 56. To satisfy the second prong of the Strickland test, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In reviewing a state court's resolution of an ineffective assistance of counsel claim, the Court considers whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1),

> it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

<u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002) (citations omitted); <u>see</u> <u>also</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied <u>Strickland</u> incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.") (citations omitted).

Having reviewed the record, the Court finds that the state court did not unreasonably apply <u>Strickland</u>. The Court will recommend that Petitioner's claim as asserted in Ground Three be denied.

### 1. **Adequate explanation of defense**

Petitioner contends that counsel was ineffective for not adequately advocating her position that she was given a date rape drug.

The Court finds neither deficient performance nor prejudice. First, counsel's sentencing memorandum did assert that something precluded Petitioner from recalling what happened after she left Serrano's. (Doc. #1, App. 8 at 4-5, 8.) The pre-sentence report further stated that Petitioner "believes she might have been drugged sometime prior to the collision." (Doc. #10, Exh. A at 2.) Counsel also argued at sentencing that Mr. Roanhorse had given Petitioner something so that he could have sex with her. (Doc. #1, App. 6 at 105-07.) Counsel further requested that National Medical Services screen the blood sample for the presence of "date rape drugs." (Doc. #1, App. 10 at 180.) Counsel, however, presented no evidence, and Petitioner still has presented no evidence that Petitioner was actually administered a date rape drug prior to the incident in question.

Second, any further attempt by defense counsel to blame Petitioner's three crimes on unproven involuntarily intoxication could have backfired by further alienating the trial judge, who found Petitioner's failure to accept responsibility as an aggravating circumstance. (Doc.

#1, App. 6 at 137.) Three samples of Petitioner's blood were analyzed, returning BAC results from .157 to .192. (Doc. #10, Exh. I.) Thus, whether or not she was given any sort of date rape drug, she was still seriously intoxicated by alcohol. Moreover, two different lab tests (one by DPS and one by National Medical Services) showed the presence of metabolites of cocaine and marijuana in Petitioner's blood. (Doc. #1, App. 10; Doc. #10, Exh. I.) That fact, coupled with police finding cocaine and marijuana in Petitioner's car, along with numerous items of drug paraphernalia – the judge would have questioned counsel aggressively pursing an unproven defense that Petitioner's crimes resulted from the involuntary administration of a date rape drug.

### 2. Timely assertion of Blakely/Apprendi claim in Rule 24.3 motion

Petitioner claims counsel was ineffective for not timely filing the Rule 24.3 motion raising the Blakely/Apprendi issue. Petitioner is correct – that defense counsel filed an untimely motion to correct the sentence, and that said motion was denied as untimely. (Doc. #10, Exh. J; Doc. #1, App. 9.) Although such conduct can constitute deficient performance, there was no prejudice.

An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. See Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)). "To show prejudice under *Strickland* from failure to file a motion, a defendant must show that (1) had his counsel filed the motion, it is reasonable that the state court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999); see also Kimmelman v. Morrison, 477 U.S. 365, 373-75 (1986) (so stating with respect to failure to file a motion to suppress on Fourth Amendment grounds). The motion requested a correction of the sentence due to an alleged Blakely error. (Doc. #10, Exh. J.) As discussed in connection with Ground One, there was no such error. Since the motion, even if timely, would have been denied, there was no prejudice to Petitioner.

### 3. Failure to obtain a more favorable blood test

Petitioner alleges ineffective assistance because counsel did not get "a true re-analysis of Petitioner's blood completed, in order to detect the level of alcohol and the possible presence of metabolites of possible date rape drugs."

The State submitted a report showing that Petitioner's BAC levels after the accident went from .192 to .174 to .157. (Doc. #10, Exh. I.) Petitioner agreed with the statement in the factual basis that she had a BAC of .192 at approximately 5:00 a.m. (Doc. #1, App. 7 at 38.) The State submitted to the court two reports, one from the DPS lab and one from National Medical Services, regarding the presence of metabolites of cocaine and marijuana in her blood. (Doc. #10, Exh. I.) Petitioner does not dispute the test results, but merely complains that there was no "independent" defense test.

First, it was not deficient performance not to request a re-test of the blood samples because, in view of the other overwhelming evidence of alcohol intoxication and drug use, such re-testing would have been of limited value. See Murtishaw v. Woodford, 255 F.3d 926, 948 (9th Cir. 2001). Second, she has not established prejudice, because neither she nor the expert who submitted an affidavit on her behalf showed what more testing would have revealed, or how it would have made any difference to her case.

### 4. Lack of advice re Apprendi

Petitioner asserts counsel was ineffective in not advising her that the State has to prove aggravating circumstances to a jury. Counsel's performance was not deficient because there was no Blakely/Apprendi defect at sentencing, for the reasons previously discussed. Thus, it would have been futile for counsel to advise Petitioner about any need for jury findings on the aggravating circumstances. See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance"). In addition, there is no prejudice because the Blakely/Apprendi claim is meritless. Moreover, even if Petitioner had a valid Blakely/Apprendi claim, she does not show that she would not have pled guilty if counsel had advised her about the jury finding aggravating circumstances. See Hill v. Lockhart, 474 U.S. 52, 60 (1985).

### 5. Lack of language in plea agreement regarding Apprendi

Lastly, Petitioner argues ineffective assistance because the plea agreement lacked language that might have indicated that she had constitutional rights regarding sentencing under <u>Blakely</u>/<u>Apprendi</u>. Again, counsel's performance was not deficient because there was no <u>Blakely</u>/<u>Apprendi</u> issue with the sentencing, and there is no prejudice because the <u>Blakely</u>/<u>Apprendi</u> claim is meritless. Accordingly, it would have been futile to include further language in the plea agreement. See <u>Rupe</u>, 93 F.3d at 1445.

**D.  Ground Four**

Petitioner's fourth ground for relief alleges that her plea should be set aside based on newly discovered evidence. The newly discovered evidence to which Petitioner refers appears to be a portion of the deposition of Liliano Castro.

Petitioner argues, "[t]he deposition was taken on October 29, 2004 and its transcript was sent to the defense on May 18, 2005. It contains testimony that ... lends credibility to Petitioner's impression that she was surreptitiously dosed with intoxicants." The "testimony" to which Petitioner refers constitutes, in its entirety, the following question from the examining attorney: "We had a report here from some people that went into the bar and their job is to watch and make sure everybody is doing their job right. And they indicated in their report, and this is like two days after the 27th of August 2003, that Taylor [Massey] poured extreme amounts of alcohol in the drinks. Did you ever see anything like that?"

As set forth previously, Petitioner attached the Castro deposition to her post-conviction relief pleadings to support her newly discovered evidence claim. The State filed a motion to strike claiming that "the deposition was never attached to [Petitioner's] original [p]etition ... [and] violates not only Rule 32, but also settled precedent designed to promote fairness in litigation." On January 1, 2007, the state court issued a minute entry granting the State's motion and striking the Castro deposition.

First, the Court notes that Petitioner appears to argue a violation of state law in that she is objecting to the state court's ruling on her newly discovered evidence and claiming that the state court erred by not granting her a new trial or an evidentiary hearing based upon the

alleged new evidence. Federal habeas relief is not available to redress errors in state post-conviction proceedings. See Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) ("[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings."); see also Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998) ("[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings"); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997) (errors committed during state post-conviction proceedings are not cognizable in a federal habeas action); Villafuerte v. Stewart, 111 F.3d 616, 632 n.7 (9th Cir. 1997) (claim that petitioner "was denied due process in his state habeas corpus proceedings" was not cognizable on federal habeas review). This is because a habeas petitioner must allege that his or her detention violates the United States Constitution, a federal statute, or a treaty. See Franzen, 877 F.2d at 26; 28 U.S.C. § 2254(a). An attack on the petitioner's state post-conviction proceedings "is an attack on a proceeding collateral to the detention and not the detention itself." Nicholas v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995). "Errors or defects in the state post-conviction proceeding do not ... render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings." Williams v. Missouri, 640 F.2d 140, 143-44 (8th Cir. 1981).

To the extent that Petitioner's claim can be construed as one presenting a freestanding claim of actual innocence based on newly discovered evidence to this Court, the claim may also be denied. The Supreme Court has never recognized a freestanding claim of actual innocence based on newly discovered evidence. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."). The Ninth Circuit recognizes an exception where a defendant produces "affirmative proof of actual innocence based on newly discovered evidence." Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002). However, the Ninth Circuit also requires that

a habeas petitioner asserting a freestanding claim of actual innocence make a "stronger showing than insufficiency of the evidence to convict" showing adopted by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 319 (1979). See Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997). The required showing must go "beyond demonstrating doubt about [the petitioner's] guilt, and must affirmatively prove that he is probably innocent." Id. (citation omitted). Post conviction evidence serving only to "undercut the evidence presented at trial" does not suffice to meet this standard. Id. at 477; see also Spivey v. Rocha, 194 F.3d 971, 979 (9th Cir. 1999) (habeas relief unavailable where "the totality of the new evidence does not undermine the structure of the prosecution's case"); Swan v. Peterson, 6 F.3d 1373, 1384-85 (9th Cir. 1993) (newly-discovered evidence warrants habeas relief only when it bears on the constitutionality of the conviction and probably would produce an acquittal) (citations omitted).

Petitioner's free standing claim of actual innocence on the basis of newly discovered evidence without any constitutional error at trial does not establish grounds for federal habeas relief. Further, there is no clearly established federal right to new trial or evidentiary hearing on the basis of newly discovered evidence.

Even if she was not so precluded, Petitioner does not provide sufficient support for her newly discovered evidence claim to warrant habeas relief. Initially, the Court notes that Petitioner mischaracterizes the Castro deposition. When asked if she had ever heard a report or was aware that Mr. Massey poured extreme amounts of alcohol in the drinks he made, Ms. Castro answered, "No." (Doc. #1, App. 2 at 52.) Ms. Castro also stated that the bartender did not even mix margaritas because they were pre-made, and that, to her knowledge, he used a "measurer" provided by the bar to measure the amount of tequila poured into drinks. (Doc. #1, App. 2 at 49-51.)

Even assuming that Mr. Massey poured strong drinks for Petitioner, she nevertheless made the decision to drive, knowing that she was under the influence of alcohol. Her own investigator reported that Mr. Roanhorse stated that he "had tried to take the car keys from her, but that she would not allow him to get them and she drove off." (Doc. #10, Exh. K at

3.) The bartender was concerned that Petitioner had too much to drink, and obtained confirmation from Mr. Roanhorse that he would be driving. (Doc. #1, App. 6 at 90-92.)

As part of her involuntary intoxication claim, Petitioner attempts to justify her actions by renewing the claim that Mr. Roanhorse sexually assaulted her in the subject vehicle. Petitioner submits her own statements contending that Mr. Roanhorse is a mere "acquaintance" and that she had an appointment with a different man on August 28, 2003. The record demonstrates, however, that Plaintiff's claim of sexual assault is not a new allegation; defense counsel argued at sentencing that Petitioner failed to stop after the accident because of a "post-rape" mental state. (Doc. #1, App. 6 at 105-07.) Also, Petitioner's sentencing memorandum claimed that she was "fleeing from some type of sexual activity perpetrated upon her prior to the accident." (Doc. #1, App. 8 at 6.) In any event, whether Petitioner was sexually assaulted is irrelevant to her crimes, which occurred because she chose to drive while intoxicated.

Petitioner also cites to an affidavit and supporting documents from Dr. Walter Frajola regarding independent testing of her blood sample. At best, the "evidence" shows that National Testing Services did not perform a proper independent test on Petitioner's blood sample. Petitioner, however, has not demonstrated that further testing would have yielded different results. Dr. Frajola's affidavit does not demonstrate what further testing would have revealed, or that further testing would have made any difference in this case.

The Court finds that Petitioner neither alleges an independent constitutional violation nor presents affirmative proof of her innocence. In fact, she argues only that the newly discovered evidence contains testimony that "lends credibility to [her] impression that she was surreptitiously dosed with intoxicants" – not evidence which conclusively establishes that would have produced an acquittal if Petitioner had chosen to reject the plea agreement and go to trial.

Accordingly, the state court's decision to reject this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable

determination of the facts in light of the evidence presented. The Court will recommend that Petitioner's claim as asserted in Ground Four be denied.

**E.     Ground Five**

In Ground Five, Petitioner contends that the factual basis for the plea was insufficient to support her guilty plea. Petitioner relies on Ariz.R.Crim.P. 17.3 to support her argument.

Petitioner has failed to establish that the state court's decision was contrary to, or involved an unreasonable application of, federal law. As such, the Court will recommend that Petitioner's claim as asserted in Ground Five be denied.

Petitioner pled guilty pursuant to a written plea agreement which the trial court accepted. Where a defendant pleads guilty, review is limited to whether the underlying plea was counseled and voluntary. See United States v. Broce, 488 U.S. 563, 569 (1989); Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense of which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient.]").

The record demonstrates that Petitioner "knowingly, intelligently, and voluntarily" pled guilty pursuant to the terms of the plea agreements. (Doc. #1, App. 7 at 40.) Significantly, Petitioner attested to the accuracy of the factual bases for her guilty plea. (Doc. #1, App. 7 at 39.) A petitioner's "solemn declarations in open court carry a strong presumption of verity." United States v. Rubalcaba, 811 F.2d 491, 494 (9th Cir. 1987) (rejecting claim of involuntariness of guilty plea). In accepting Petitioner's guilty plea, the court noted that Petitioner had acknowledged that she was guilty of the charges set forth in the plea agreement and that there was a factual basis for Petitioner's plea. (Doc. #1, App. 7 at 37-40.)

Assuming, however, that the factual basis was flawed, it would nonetheless not give rise to a Constitutional violation. Federal Rule of Criminal Procedure 11 and Arizona Rule

17.3 require that there be a factual basis for the plea. Neither rule of procedure, however, is "constitutionally mandated." McCarthy v. U.S., 394 U.S. 459, 465 (1969) (citing Waddy v. Heer, 383 F.2d 789 (6th Cir. 1967)). If a plea is otherwise intelligent and voluntary, a state court is not required by the Constitution to establish a factual basis. See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970) ("Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the later element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."); Rodriguez v. Ricketts, 777 F.2d 527, 527-28 (9th Cir. 1985) (per curiam) (rejecting petitioner's claim that he should be granted habeas corpus relief because his guilty plea was not supported by a factual basis on the grounds that, although a factual basis is required under Arizona law, "relief under section 2254(a) can be granted only for a violation of the United States Constitution, a federal statute, or a treaty" and "the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances").

Thus, Petitioner's claim that her rights were violated based on the allegedly insufficient factual basis is not a valid Constitutional claim, because no right to a sufficient factual basis exists under the United States Constitution. As a result, Petitioner's claim is based only on the state court's failure to comply with Arizona Rule of Criminal Procedure 17.3, which, as a state law claim, is not subject to habeas corpus review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions").

## CONCLUSION

Having determined that all five of Petitioner's claims either fail on the merits or are not cognizable on federal habeas review the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. An objection or a response to an objection shall not exceed seventeen (17) pages, exclusive of attachments. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 9th day of April, 2010.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge